324-0322 Michael Poundstone vs. Kevin Cook Appellant. All right, Mr. Fuller, are you ready to proceed? Ready, Your Honor. Thank you. Go ahead. Good morning, Your Honors. Counsel, Madam Clerk, thank you for the opportunity to speak this morning. My name, for the record, is Michael Fuller. I represent Kevin Cook, who is the defendant appellant in this case. The matter has been pretty thoroughly brief. I will try to be concise in light of that, so I will embrace Your Honor's time. Your Honors, this matter stems from a real estate transaction between Mr. Poundstone and Mr. Cook, whereby Mr. Poundstone purchased the property from Mr. Cook pursuant to a residential real estate contract and appended Disclosure Act Declaration, which is part of this action. Approximately sometime after purchase of the house, problems appear to have developed, leading to just short of a year afterwards, after that filing of the underlying action. This was after demand or correspondence between Mr. Poundstone and Mr. Cook's counsels that didn't yield any result. The action, again, was filed as a three-count action. For count one, ultimately, there was a medical complaint, ultimately coming down to a Residential Disclosure Act violation allegation, common law fraud, and willful and wanton conduct. Ultimately, the count three was denied. The willful and wanton conduct wasn't found, which implicitly equals a denial of the count two, because you need that intent element on common law fraud as well. At issue in the case with respect to disclosures boils down to the responses to questions two, four, and six on the disclosure form, wherein the defendant marked no. The question two being, I'm aware of any flooding, recurring leakage problems in the crawlspace or basement, response was no. I'm aware of material defects in basement or foundation, including cracks or bulges, the response was no. And I'm aware of material defects in walls, windows, floors, or doors, response was also no. In the plaintiff's case in chief, notably, there were no, all the photographs, and I can see there was a large amount of photographs that were admitted into evidence. However, nothing had been admitted into evidence with respect to what was discovered or found prior to any work being done. All the photographs seem to be in the midst of a remodel. And notably, in considering the amount of damages, monetary damages sought, there were no photographs submitted showing the completed work, nor were any sighted inspections of any kind done. So, ultimately, a judgment, a partial judgment was entered, wherein the trial court stated $104,000 of damages, and appeal followed. The third district, your honors, the third district appellate court later determined that the, was not a final and appealable order at that point, and returned to the trial court for further actions. It's been well briefed as to how the notice of appeal got filed and so forth, and, but I, so I won't spend any time going into that. What I chiefly wanted to address, the, the Residential Disclosure Act requires proof by clear and convincing evidence to find liability, and damages, of course, must be proven to a reasonable degree of certainty. And not an absolute, but at least a reasonable degree of certainty. And in this case, the court, the trial court, and I appreciated the trial court's time. We were there for a significant amount of days. The trial court, at the close of plaintiff's case in chief, we brought a motion for directed finding, which was denied. The trial court erred, and our position is the trial court erred, and in that directed finding, again, for the reasons that I've somewhat alluded to, and that the court erred in its legal standard that it applied in finding liability on part of the defendant. Namely, that there's sort of work together here. Namely, the decision largely, and let me back up a step, it was pointed out, it was testified to ultimately, that there had been a repair in 2005, that there was some water Mike Sutphin, late Mike Sutphin, testified. He was the contractor who was involved in that aspect of the job, that he, to the steps he took to correct that, and that there was, seemed to be good to go. But the testimony as to water damage largely seems to be based on the, Mr. Cook putting his foot through the wall, fell off a treadmill, put his foot through a wall, seems to have been, to my recall, maybe about a patch, approximately, maybe a 12 inch by 12 inch patch, and somehow it's expected, or the court believes that Mr. Cook should have known that there was all of this mold behind the wall, let alone there was no testimony as to when this mold would have occurred, but somehow he was supposed to know, knew or should have known, and that's not really Mr. Fuller, would it not be unfair to suggest that the trial judge, as it relates to that particular question, did not find Mr. Cook credible that the reason for the repair was falling off the treadmill and putting his foot through the drywall? I mean, a lot of these determinations are ultimately credibility findings, aren't they? I would agree that, yes, ultimately credibility findings, yes, Judge, but not solely credibility findings, I would add. All right, continue. There was testimony regarding- I'm sorry, Mr. Fuller, it seems to me, you've acknowledged that it's mostly credibility findings, what wasn't a credibility finding? Because it seems to me that these credibility findings that are inherent in the judge's rulings really are the problem in your case. What's left that's not a credibility finding? There still has to be some evidence, other than you've got Mr. Rambula who concedes that he didn't know when that hole was done, when anything was done, and from a credibility standpoint, it's unreasonable to expect that Mr. Cook would be just as a practical matter, Judge. And with respect to the- there was a wall outside, and there was a deck, there was issues claimed with that, all of which would have been observable by Mr. Ponson before he bought the house. It seems that some of these repairs revolved around that as well. So the act requires a clear and convincing evidence, and there really hasn't been clear and convincing evidence. And with respect to the damages aspect of this, the partial judgment is $104,000, the partial judgment, not final order partial judgment. And what doesn't make sense is the trial court, the trial court stated that this court was troubled by lack of concrete evidence in the amount of money paid by plaintiff to Rambula to repair. Rambula is Mr. Benjamin Rambula. The only evidence introduced on that $104,000 is- and I don't mean this in a bad, in a snarky way, as a necessarily self-serving statement that I paid $104,000 and the recipient saying I received $104,000. But there's no documentation of that whatsoever. The court noted that the plaintiff actually noted this. The plaintiff did not produce canceled checks, cashier's checks, withdrawal slips, loan documents, paid receipts from the contractor, paid receipts for materials. What was exhibit 19? The one that was withdrawn, exhibit 19, when they attempted to admit it, I cross-examined them, and again, it was never admitted, it was withdrawn, exhibit 19. And in my cross-examination, looking back in my notes, I had pointed out on cross-examination that there were bills for soda pops, Scott tissue, which I assume is toilet paper, insect repellent, paper towel, bathroom cleaner, tarnix cleaner, a generator, gasoline, and all sorts of other items. I don't remember, and I don't think it's plaintiff's duty to testify to that or continue to admit it. The plaintiff withdrew it. I don't think I, I don't, I mean, I'm not here to, I'm citing only what I cited on the record on the cross-examination, but notably, it wasn't, it was actually withdrawn. What's the effect of it being withdrawn, Mr. Fuller? I think it, I think it raises this question as to, well, if it's withdrawn, it didn't exist. It can't be considered, correct? Correct. But I think the fact, I think the fact that it was withdrawn could be go towards credibility, Judge. But, but, but the fact that the, and I understand Justice Holdredge's point, that's well taken, but, but the testimony of Mr. Poundstone as it relates to what he paid and why he paid it and what it, what the money was advanced for, which was the point of Exhibit 19, even though 19 is an exhibit, it's not admitted, does that discount the validity of what Mr. Poundstone testified to? I think what, what affects the validity of what Mr. Poundstone testified to is, well, damages don't have to be proved to an absolute certainty. They certainly have to be proved to a reasonable degree of certainty. Okay, so how do you prove, how do you prove to a reasonable circumstance, reasonable certainty? If the man's credible, is that reasonable certainty? No, I would argue not, not for $104,000. No. Oh, it depends on the I've got paper to back it up. Yeah, and some people wear belt and suspenders every day. Okay, they understood, Judge. Okay, thank you. I understand, Judge, but I think if you're coupled with the fact there's not even photographs of what the final work was done, there's just a statement as to what these damages are, and the recipient has no records of receiving it, and there's no, no photographs of the finished work. I mean, you have no hard concrete, and again, Judge Dougherty, his words, is troubled by lack of concrete evidence. Concrete evidence is a testimony, too. I understand that. I understand the point of contest. I think we're all in a problem in the legal profession of not looking at credibility the way we should look at every other bit of evidence. I mean, again, did the pants stay up or didn't they? We feel better to say they stood up, the pants stayed up because the gentleman wore a belt and suspenders, but the trial court could say the pants stayed up and he wore a belt. Mr. Fuller, you raised these arguments to the trial judge about the lack of evidence, right? I did, Judge. And the trial judge still found the other side more credible? Right. Implicitly, yeah. Yes, I'm sorry, Judge, yes. So, I'm sorry. Go ahead. And the judge, in his finding, again, troubled by the lack, and expressed concern over the lack of corroborative evidence to support it. It implies to me that it implies that the judge is not so certain about this evidence that's produced. It contradicts entering a partial judgment of $104,000. Bear with me, Judge. Again, we move forward to the denial and the motion to reconsider, and at that point, the Judge Helland, who's now sitting in that position, essentially reviewed and reiterated the, effectively reiterated Judge Dorey's decision, and then on April 10th, I believe, a final order, final judgment order was entered, which brings us to where we are today. Judge, we're talking about, I'm sorry, your honors, plural, I'm sorry, judges. We're talking about clear and convincing evidence. Judge Dorey's being troubled by lack of corroborative evidence. Scratch that. We're talking about proof of liability by clear and convincing evidence, not a preponderance. Judge Dorey, in his opinion, seems to rely on a preponderance standard. Says the plaintiff knew or should have known effectively what's behind walls. And I'm trying to be facetious, but there's no way to know what's behind a wall, and there's not a duty, even under the Residential Disclosure Act, to take affirmative acts to start tearing the walls out to look for something. He reasonably believed that those repairs, any repairs he had done, had been done and finished, and in anything as it relates to water, Mr. Sutton also testified and corroborated who nobody's assailed his credibility in any of this. For those reasons, Judge, we would ask that the court vacate the court's prior orders and send it back to enter a fining in favor of Mr. Cook. Thank you, your honors, for your time, and thank you for the questions. I appreciate it. Justice Holdredge or Justice Anderson, any questions? All right. Mr. Fuller, you have an opportunity in reply. Mr. Mueller. Good morning, honors. May it please the court. My name is Matthew Mueller. I represent the plaintiff, FLE Michael Poundstone. The defendant, as you know, appeals a judgment from LaSalle County Circuit Court. There are really four issues that the defendant presents. The first is challenging the judge's ruling on the directed verdict, claiming that the judge ruled on the wrong standard. He did not rule on clear and convincing. They challenge judge the damages, and they challenge post-judgment interest, whether it starts in April of 24 or April of 2020. In regard to the first three issues, what it ultimately comes down to is the court's standard of review is manifest weight of the evidence. Specifically, and related to the directed verdict issue, the plaintiff and defendant's briefs argue a different standard. The defendant argues, at least in his reply, that it's a de novo standard. I want to be clear with the court. When there is an issue of a directed verdict, motion for directed finding is presented to the trial court. It's a two-stage procedure. The first stage asks, did the plaintiff make a prima facie case in regards to all of their elements? If the trial court finds that the plaintiff didn't, and that goes up on appeal, then that's a de novo standard. If it gets past that first stage and gets to the second stage, then the trial court is considering all of the evidence, including the evidence that's favorable to the defendant. They're looking at credibility, and they're drawing inferences based upon that credibility. If it gets to that second stage, whether or not the trial court erred in regard to a directed verdict, that's a manifest weight of the evidence standard. Was the decision clearly erroneous? Over and over again, that's what issue we're talking about. For the directed verdict, for the clear and convincing evidence argument, and for the damages, it's a matter of credibility. In regards to the clear and convincing, I will point out the trial court, at least I think on two occasions, identified that this is a clear and convincing evidence standard. The trial court knew what standard it was dealing with here because they articulated it. What the defendant's argument really is, is if he knew the standard, he didn't apply the standard properly because he shouldn't have found the way he should have. That, once again, is a manifest weight of the argument standard. What we're left with is, what does the court have here? What the court has is testimony that this damage was a long time standing. There was a hole in the wall right where the damage was that was patched up. There was patches made on the deck above. There were scab boards that were installed. You have text messages where the defendant is saying everything in this house is perfect. That's clearly enough on a manifest weight of the evidence standard. There's also something that the trial court didn't talk about a lot. The defendant testified that he did not live in that house for the 12 months prior to the signing of the disclosure. That's contrary to what he actually put in the disclosure. He put that he'd been there the last 12 months. That's important because Mr. Poundstone testified that as soon as, I think it was as soon as the weather broke, it started to get warmer, he could smell this problem. Even if you don't believe any of the other evidence, we have a situation in which the defendant wasn't obligated to look through walls. If the defendant had been honest about his disclosure and how long he had lived at this residence, he wouldn't have had to look through the walls because the smell permeated the walls. Under every set of circumstance, we have a trial judge who got to eyeball the witnesses and made factual determinations based upon hearing the testimony. Under these circumstances, his ruling isn't clearly erroneous, which I think would be the standard. The opposite conclusion isn't called, which would be the manifest weight of the evidence standard. Instead, the decision makes total sense with the evidence that we're seeing. I don't think the trial court's obligated to ignore the fact that there was a patch right in a location where there was a bunch of this mold and deterioration and say, oh, that was just a coincidence. The trial court's allowed to jump to reasonable conclusions based upon the evidence. That's what it did here and that's why it found in favor of the plaintiff. Can I ask you to jump to the damages question for a second? Sure. I don't understand why, if there are receipts, if there are ways to prove that monies actually were paid, and I recognize testimony is evidence, but what's with the why wasn't there documentation introduced regarding repair bills that were paid? First, Judge, I would like to point out I was not trial counsel. I know that. Is there something that I'm missing in terms of that issue? There was testimony that a lot of these payments were cash payments. Under the circumstances in which you're talking about damages, you only have to be really specific to establish that there are damages. Then once you've established the damages exist, you don't need the same specificity once you know the damages exist. So we are in a situation where, I mean, it did come out that this contractor, I believe, didn't get a building permit, was not licensed through the city, if I remember correctly, and the cash payments were made. The nature of how this repair was done is not what I, as a plaintiff's attorney, would like, but it is practically how these types of repairs are done all over the country every day, cash payments to an individual, and then the only testimony that you have is, I made these cash payments. Now, the court went a step further, though. The court saw the damages that was done. It saw pictures of the walls ripped out, so it got an understanding of how much work was there. It's not the court just saying, I don't believe you or I believe you. The court's hearing everything. When the court hears that I, Mr. Poundstone, paid $104,475.34, if it's looking at the pictures of the damages, the court's able to say, that makes sense to me based on all of the other evidence. I completely agree with you, Justice, that it would be preferable to have receipts. It's just, it's not required. Oftentimes, plaintiffs don't fix things. They don't do these types of repairs in anticipation of litigation, and it's just not available. I'm going to assume that what was available, the evidence that was available, was primarily Mr. Poundstone's testimony. I'll also point out that the court dramatically cut down what Mr. Poundstone was claiming. There are elements, there are entire things that the court said, nope, I'm not giving that to you, to the tunes of tens of thousands of dollars. What we're really left with here is that ruling against the manifest weight of the evidence. And there hasn't been testimony contrary. So if the defendant wanted to introduce evidence that this is a $10,000 job and they could find someone to testify to that, that would be contrary evidence. What we have here is we have unrefuted testimony that this is what was paid, and a witness who the court obviously did find credible. In addition, I mean, I guess the next argument that the defendant makes is when post-judgment interest starts. And I'm not sure the trial court ever really addressed that issue, but I would like the court to make a ruling on the issue. It's self-serving, but it clarifies when the starting point is. And I think clearly based on case law, the starting point is when the judgment was originally entered in 2020. I would just point out that in this circumstance- Not all the case law reflects that. I mean, there is some conflict in the cases, is there not? I think as I pointed out in my brief, there's a first district case that just says this is when final judgment is entered. This is when the interest starts. However, later on, there's another first district case that actually addresses this issue and goes back to the point where a partial judgment was entered and said this is appropriate under these circumstances. So I would suggest that to the extent, I mean, there is no legal reasoning that is the basis for the first district case. It's just a, this is how it is. I'm not sure Eddings or certain underwriters or Andrews, any of those three cases have the most robust analysis. Maybe there's not a lot you can say. I mean, the statute says what it says. Yeah. I mean, none of it is as detailed as you would like. However, I mean, even the defendant pointed out there is a case out there. In their reply, they pointed out that there's, you know, it's kind of each case goes by each case of when the interest starts. And I would that the court would need to consider the fact that a big delay in this case, the reason we're talking about a judgment that it was entered in 2020 and now our argument in 2025 was because before a final judgment could even be entered, the defendant appealed and took jurisdiction away from the trial court. So under those circumstances, you certainly don't want a when the issue is not ripe and thus getting years of not having to pay this without it, without interest also accruing. So I would suggest that if the court wants to address this issue in this case, even though it hasn't been addressed by explicitly, I don't believe by the trial court, the court would certainly have to consider that. And I would suggest that 2020 is an appropriate time period to start because at that point, everything except attorney's fees was established. There's nothing left out there that's not at issue other than what are the attorney's fees. And even the attorney's fees is kind of an interesting issue because attorney's fees theoretically increase as you go through the appeal. So the idea that you would reserve attorney's fees does make sense. I think post-judgment interest should start on, I think it was April 30th, 2020. I'm sorry, you mentioned that the trial judge didn't make a lot of express findings with regard to post-judgment interest, but just based on the numbers, the trial judge clearly awarded interest as of the date of the initial judgment and not the final judgment. Is that accurate? I believe that's accurate. Yes. I guess what I'm getting at is the trial court didn't, there's no substantive argument about why the trial court's coming to the conclusion that's coming to it. And it's not as if I didn't find anywhere where it appears that this issue was fully briefed by the parties and specifically addressed. Thank you. And that's all I have if there are any questions. Justice Holdridge or Anderson? All right. Thank you, Mr. Mueller. Mr. Fuller, reply. Mr. Fuller, you're muted. I'm sorry, judge. I didn't want to hear everybody hear me blow my nose before, so I shut it off. Sorry, judges. It's been fully briefed. This issue, Mr. Mueller, it's been discussed. It was discussed in the trial court. The judgment was not a final order. The reasons for the notice of appeal having been filed were fully briefed, and there was no attempt to skate anything, which is sort of what's implied. And I'm sorry for the vernacular. My apologies, judges. The plaintiff had no time. While the plaintiff verbally made overtures that it shouldn't have been appealed, the plaintiff, nonetheless, did nothing to take it out of the appellate court. And given that the appellate court, Suspente, the third district here, sent it back to the trial court, it would seem that the plaintiff could have, certainly could have filed a motion to remove it, which likely would have been granted. They chose not to. With respect to living in the house in excess, with question one on the disclosure report, I don't have the chapter and verse in front of me, but the testimony, I believe Mr. Cook's that he had lived in the house in the last 12 months, I believe his testimony was he lived there approximately 11 months after the execution of that document. So he did, in fact, live there within the previous 12 months. The text messages, I recall, I'll go back and look at this after today, but I don't recall a single text that says everything's perfect. The text was to the effect of, I think you'll love the house. And again, I am likewise paraphrasing, but I don't believe there's a single text that says everything's perfect. Bear with me, your honors. And in terms of thinking counsel made the assertion that the trial court or judge already felt Mr. Cook is being dishonest. I don't think that's accurate. I think that the trial court denied the punitive damage claim. If the trial court, I think it's reasonable to draw from that, that if the trial court felt Mr. Cook was being dishonest or deceitful, he certainly would have entered a punitive damage judgment or some sort of penalty for that. And the court specifically denied that. Just a note on pictures, and I'm sorry for jumping around. I'm just trying to, I don't want to waste a bunch of time, your honor's time. The only pictures that are produced were of work in the middle of this demo slash remodel. As far as repairs to the outside, and I stated this at the trial court, Mr. Poundstone chose not to look. I don't think there's a dispute that some repairs had been done, but Mr. Cook thought it was sufficient. Mr. Poundstone chose not to observe them. And I think this was even brought on across examinations a few years ago now, but to my assumption, there wasn't an inspection. Most people would do an inspection if they're spending $300,000 plus, but there wasn't. Maybe he should have looked, but maybe he didn't. Aren't we focusing on the disclosure rather than a failure to discover independently? Judge, the disclosure act does not require one to put down a disclosure of something that he reasonably believes was repaired. Oh, I understood you to be focusing on Mr. Poundstone's failure to look. I think it's the fact that, Mr., if I buy a house and I see the I think, I guess arguably goes to credibility of Mr. Poundstone. I mean, if I'm going to buy, I can think of any number of analogies to that, but I guess I don't know if I'm sufficiently answering the question or not, but. No, that's fine. Thank you. So I don't really have anything else, your honors. Thank you very much for taking the time and giving us the opportunity to come here today and muddle through doing this on Zoom for the first time, this type of an argument. Any questions from my colleagues? No, no. All right. We thank both sides for a spirited argument. We will take the matter under advisement and issue a decision in due course.